Attachment "A"

STIPULATION OF FACTS

1.  At all times relevant to this prosecution, the Defendant was a participant in the *warez scene, i.e.*, an underground online community comprised of individuals and organized groups who engage in the large-scale duplication, modification, reproduction, and distribution of copyright protected software over the Internet, in violation of federal copyright law. The leading *warez* participants and *warez* groups compete with one another to attain the reputation as the fastest, highest-quality provider of *pirated software*, such as computer software, games, movies, and music files that have been *cracked, i.e.*, software with copyright protections removed or circumvented.

2.  An individual's involvement in the *warez scene* can take place through a number of activities. Certain participants obtain access to copyrighted software, games, movies, and music; other participants *crack* the digital copyright protections on those works; and yet others test the *pirated software* – also known as *warez* – for functionality and repackage the digital files for widespread dissemination. In addition, *couriers* distribute the *pirated software* to various file storage sites on the Internet, usually *FTP* – File Transfer Protocol – sites, for others to access, reproduce, and further distribute. Other individuals are specifically responsible for the systems' administration, site operation, or hosting of such *FTP sites*.

3.  *FTP* is a communication protocol for transferring files between computers connected to the Internet. *FTP sites* – also known as *FTP servers* – are computers connected to the Internet that serve as large storage facilities for software or other digital files which, in turn, may be copied and downloaded by users of the site through the *FTP* protocol. In the *warez scene, FTP sites* are most often used to store and crack copyright protected software and other digital media and to host, collect, distribute, and trade illegal *warez*. These sites are not accessible to the general public.

19

Access to *FTP warez sites* is typically controlled through a variety of security mechanisms. For example, a user is typically required to log on to the *FTP site* using a screen name and password approved by one of the system administrators for the *FTP site*. In most cases, the final level of authentication, which is done automatically, requires the user to attempt access to the *FTP warez server* only from a specific, authorized Internet Protocol (or *IP*) address previously supplied to the system administrator(s). Failure to meet any of the security requirements results in a denial of access to the *FTP server*.

4. *Warez groups* compete with one another to be the first to release new *pirated software* to the *warez community* for unauthorized reproduction and distribution worldwide. Preparing new *pirated software* for release and distribution to the *warez scene* generally requires a number of different steps. First, an individual, known as a *supplier* will post an original copy of new computer software or other digital media to an *FTP server* on the Internet known as a *drop site*. Frequently, *suppliers* are company insiders, software testers, or reviewers who can provide final versions of new product before it is released to the general public. Once the new supply is posted to the *drop site*, another individual, known as a *cracker*, retrieves the software and removes or otherwise circumvents its copyright protection controls, including serial numbers, tags, duplication controls, and/or security locks. Once successfully *cracked*, the software is tested and packed for final posting to the *drop site*, where it is picked up by *couriers* for rapid distribution to other *warez sites* worldwide and, eventually, reaches public distribution channels such as publicly-accessible websites or online auctions. The entire process – from the initial appropriation of the copyrighted work to its worldwide pirated distribution – can, and typically does, occur within a matter of hours.

5. Active participants in the release and distribution process are rewarded in a variety of ways, often with privileged access to large, non-public caches of pirated works on *warez FTP*

20

*sites*. With this access, a user is able to download vast amounts of *pirated software* for personal use or further distribution.

6. The Federal Bureau of Investigation (FBI) has conducted an investigation into various members of the *warez community* and has identified the Defendant as an individual involved in the illegal reproduction and distribution of copyright protected software, movies, games and music.

7. On or about January 2004, the Defendant conspired with other individuals to build and operate a new *warez FTP server*. The server was intended to provide a private group of members with a library of copyright-protected material which they could duplicate for their own purposes.

8. From January 21, 2003 through April 21, 2004, the warez FTP server quickly grew in size and contained approximately 13,000 pirated software titles including movies, games, utility software and music. The new *warez server* also had a 100 megabyte Internet connection.

9. Evidence obtained from the warez FTP server include computer-generated log files containing information regarding the activities of computer users, processes running on a computer, and the activity of computer resources. Log files may include *transfer logs* that capture information about each *FTP file transfer*. *Transfer logs* may include the date of transfer, name of the file transferred, direction of transfer (upload or download), the name or nickname of the individual accessing the computer, and the *IP address* of the computer sending or receiving the file.

11. *Transfers logs* obtained from the warez FTP server indicate that the Defendant transferred numerous software titles to and from the warez FTP server between August 16, 2003 and April 2, 2004. For any six month period during this time, the *transfer logs* evidence that the Defendant reproduced and/or distributed at least ten (10) copies of copyright protected software by transferring said software files to or from the warez FTP server and, collectively, the retail value of

transferred software exceeded $2,500. Records obtained from the Defendant's *Internet Service Provider* confirm that the Defendant accessed the warez FTP server from a computer located at his residence in Iowa City, Iowa.

12. On April 21, 2004, FBI agents executed a search warrant at the Defendant's residence and confiscated six personal computers, various computer components, electronic equipment, PC games and software. At the time of the search, the Defendant cooperated with agents and provided a signed statement detailing his involvement in the illegal reproduction and distribution of computer software.

13. The Defendant also admitted his involvement in the construction and operation a second warez FTP server which was seized by FBI agents in the Central District of California on April 21, 2004. Evidence obtained during the course of the investigation, more specifically, consensually recorded IRC chat, indicate that the Defendant, in conjunction with others, built and operated this warez FTP site.

14. A directory listing of business software titles from the warez FTP servers was provided to the Business Software Alliance (BSA). The BSA represents certain software manufacturers that produce business, utility and application software products. The BSA confirmed that the directory listing of software titles found on the first referenced warez FTP server included certain products owned by their client companies which were subject to copyright protection and collectively exceeded $2,500 in retail value. The BSA also confirmed that the directory listing of software titles found on the second referenced warez FTP server included certain products owned by their client companies which were subject to copyright protection and collectively exceeded $2,500 in retail value.

15. Based on the investigation to date, the Defendant's conduct in the infringement of copyright protected software in instant case has resulted in a loss attributed to the Defendant of approximately $120,000 to $200,000.

16. The Defendant agrees that one or more of the acts constituting the offenses charged in Information occurred in the Southern District of Iowa.

17. The Defendant hereby certifies that the facts set forth above are true and accurate to the best his knowledge.

_12/15/04_
Date

_____
Jathan Desir
Defendant

_12/22/04_
Date

_____
Angela Campbell
Assistant Federal Defender

Matthew G. Whitaker
United States Attorney

_12-22-04_
Date

By: _____
Richard Richards
Assistant United States Attorney
U. S. Courthouse Annex, 2nd Floor
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 284-6257
Fax: (515) 284-6281
Email: richard.richards@usdoj.gov

_12-22-04_
Date

_____
Clement McGovern
Trial Attorney, Criminal Division
United States Department of Justice

23